Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2025 09:09 AM CDT

- 733 -

**Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports**
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

Jeanie M. McReynolds, appellant, v.
Samuel K. McReynolds, appellee.
___ N.W.3d ___

Filed July 8, 2025.    No. A-24-413.

1. **Trusts: Equity: Appeal and Error.** An action to impose a constructive
   trust sounds in equity, which an appellate court reviews de novo on
   the record, giving consideration, where the evidence is in conflict, to
   the fact that the trial court observed the witnesses and their manner of
   testifying and accepted one version of facts rather than the opposite.
2. **Divorce: Child Custody: Property Division: Alimony: Attorney
   Fees: Appeal and Error.** In a marital dissolution action, an appellate
   court reviews the case de novo on the record to determine whether there
   has been an abuse of discretion by the trial judge in his or her determi-
   nations regarding custody, child support, division of property, alimony,
   and attorney fees.
3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules
   apply, the admissibility of evidence is controlled by such rules; judicial
   discretion is involved only when the rules make discretion a factor in
   determining admissibility.
4. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to
   determine the relevancy and admissibility of evidence, and such deter-
   minations will not be disturbed on appeal unless they constitute an abuse
   of that discretion.
5. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the
   reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
   ing a litigant of a substantial right and denying just results in matters
   submitted for disposition.
6. **Trusts: Property: Title.** A constructive trust is imposed when one
   has acquired legal title to property under such circumstances that he
   or she may not in good conscience retain the beneficial interest in the
   property.

- 734 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

7. **Trusts: Equity.** In determining whether to impose a constructive trust, the court will consider not only the original situation but also all events which have occurred since the defendant began to hold inequitably.

8. **Trusts: Proof.** A party seeking the remedy of a constructive trust has the burden to establish the factual foundation, by evidence which is clear and convincing, required for a constructive trust.

9. **Trusts: Equity: Unjust Enrichment.** A constructive trust is imposed to do equity and to prevent unjust enrichment.

10. **Unjust Enrichment.** Unjust enrichment is a flexible concept, occurring when a claim is based on the failure of consideration, fraud, or mistake and in other situations where it would be morally wrong for one party to enrich himself or herself at the expense of another.

11. **Evidence: Testimony: Witnesses.** Where testimony is given by a witness on direct examination and that testimony creates an inference favorable to the party producing the witness, anything within the knowledge of that witness tending to rebut the inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right.

12. **Divorce: Property Division.** Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

13. ____: ____. The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact.

14. ____: ____. All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate.

15. **Divorce: Property Division: Equity.** The equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.

16. **Divorce: Attorney Fees.** In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed in part, reversed and vacated in part, and remanded for further proceedings.

Lyle Joseph Koenig, of Koenig Law Firm, for appellant.

- 735 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

Alex M. Lierz, of Nebraska Legal Group, for appellee.

Riedmann, Chief Judge, and Bishop and Arterburn, Judges.

Riedmann, Chief Judge.

## INTRODUCTION

Jeanie M. McReynolds appeals from the decree of dissolution entered by the district court for Gage County dissolving her marriage to Samuel K. McReynolds. She asserts that the district court erred in its failure to impose a constructive trust on Samuel's business and in its division of the marital estate. We find no error in the district court's refusal to impose a constructive trust, but determine it abused its discretion in determining the business at issue was entirely Samuel's premarital property and in refusing to receive certain exhibits. Accordingly, we vacate the portion of the decree dividing the marital estate and remand the cause to the district court to consider the excluded evidence in its determination of the marital estate and its division.

## BACKGROUND

*Procedural History.*

Jeanie filed a complaint for dissolution of marriage in June 2023. She filed amended complaints in September and December before filing the operative third amended complaint in March 2024. The third amended complaint requested the district court to dissolve the marriage, equitably divide the marital estate, pierce the corporate veil on Samuel's business, and impose a constructive trust on a one-half interest in that business for her benefit. After a trial, the district court dissolved the marriage, did not impose a constructive trust, found the company at issue to be Samuel's premarital property, divided the marital estate, and awarded Samuel attorney fees. We summarize only the evidence at trial relevant to Jeanie's assigned errors on appeal.

- 736 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

*Evidence at Trial.*

Jeanie and Samuel began dating in 2015, and in November, Jeanie quit her job in Iowa and moved to Lincoln, Nebraska, where she and Samuel resided together. At the time, Samuel worked in the recycling industry and had done so since 1996. In 2018, Samuel sold his ownership interest in the recycling company where he was working and used the money as a downpayment to form his own recycling company, which he placed in a limited liability company called Green Quest Recycling (Green Quest). Green Quest was later incorporated.

In 2019, a balloon payment on the purchase of Green Quest was due, and Samuel utilized the funds in his retirement account to assist in obtaining a loan for the remaining amount due. Jeanie did not provide any funds for the purchase, nor was she a signatory on the promissory note. Although Jeanie assisted in preparing the corporate documents to form the business entities and was present at the signings, neither her name nor signature was on the paperwork.

Jeanie began working at Green Quest in 2018 and earned a salary of approximately $14,000. By 2021, her annual salary was $80,000 and her total income from Green Quest was approximately $140,000. In July 2023, Jeanie's annual salary remained approximately $80,000. Her duties included handling accounts payable and receivable, managing employee relations, and working with customers. She testified that she spent a substantial amount of time running the company while Samuel was absent. Jeanie was also listed as the vice president of the company. Jeanie's business card and the company website identified Jeanie as an owner of Green Quest. Samuel referred to Jeanie as an owner to employees and customers.

Jeanie and Samuel were married on July 12, 2021. In April 2023, Jeanie moved out of the marital home; however, she continued to work at Green Quest. In July, Samuel terminated Jeanie's employment. Jeanie continued to be paid her salary

- 737 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

until September; she received unemployment benefits for a month or two and secured new employment in January 2024.

Samuel did not believe the value of Green Quest had grown substantially since its purchase. As of July 2023, he still owed approximately $608,000 on the business loan. At trial, Samuel provided a proposed valuation of the parties' assets and liabilities, as well as their proposed distribution. He classified Green Quest as his premarital property.

*District Court Order.*

As relevant to this appeal, the district court determined Green Quest was Samuel's premarital property and excluded it from the marital estate. At trial, the district court directed a verdict in Samuel's favor on Jeanie's request for a constructive trust, and it reaffirmed that ruling in its order. The district court divided the marital estate, ordered Jeanie to pay Samuel an equalization payment of $15,027.45, and dissolved the parties' marriage. It awarded Samuel $12,500 in attorney fees. Jeanie appeals.

## ASSIGNMENTS OF ERROR

Jeanie assigns, combined, reordered, and restated, that the district court erred in failing to (1) impose a constructive trust on Green Quest, (2) find Samuel committed fraud, (3) apply the active appreciation rule, (4) admit corporate tax returns into evidence, (5) equitably distribute the marital estate, and (6) award her attorney fees instead of ordering her to pay Samuel's attorney fees.

## STANDARD OF REVIEW

[1] An action to impose a constructive trust sounds in equity, which an appellate court reviews de novo on the record, giving consideration, where the evidence is in conflict, to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of facts rather than the opposite. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

- 738 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

[2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

[3,4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *In re Masek Family Trust*, 318 Neb. 268, 15 N.W.3d 379 (2025). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id*.

[5] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Simons v. Simons, supra*.

## ANALYSIS

*Constructive Trust.*

[6] Jeanie assigns that the district court erred in failing to impose a constructive trust on Green Quest. We disagree. A constructive trust is imposed when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest in the property. *Simons v. Simons, supra*.

[7-9] In determining whether to impose a constructive trust, the court will consider not only the original situation but also all events which have occurred since the defendant began to hold inequitably. *Id*. A party seeking the remedy of a constructive trust has the burden to establish the factual foundation, by evidence which is clear and convincing, required for a constructive trust. *Id*. A constructive trust is imposed to do equity and to prevent unjust enrichment. *Id*.

- 739 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

[10] Unjust enrichment is a flexible concept, occurring when a claim is based on the failure of consideration, fraud, or mistake and in other situations where it would be morally wrong for one party to enrich himself or herself at the expense of another. See *id*. Fraud comprises all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. *Id*.

Here, the evidence established that Samuel purchased Green Quest in 2018, prior to the marriage, and sold his shares of a different recycling company for the initial downpayment. When the balloon payment on the purchase became due a year later, Samuel utilized the funds in his retirement account to obtain financing to make the payment. The parties were not married at the time, and Jeanie did not contribute any funds. Although Jeanie assisted in establishing the limited liability company in 2018, she confirmed she was not listed as one of its members. When the corporation was formed, Jeanie was present when Samuel signed and filed the papers, but she confirmed she was not listed on the paperwork and was not a shareholder of the corporation. All of this occurred prior to the parties' July 2021 marriage.

Although Jeanie worked at Green Quest beginning in 2018, she was paid a salary to do so. Jeanie had obtained a diploma through the GED program, and there was no evidence she had experience in the recycling industry prior to her work at Green Quest; despite this lack of education and experience, in 2021, Jeanie's total income from Green Quest was $140,000, and in July 2023, her annual salary remained $80,000. Although Jeanie's business card, the company website, and Samuel all referred to Jeanie as an "owner," and she was listed as the vice president, under the facts of this case, we find this insufficient to vest Jeanie with an ownership interest.

Jeanie relies in part on *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022), to support her argument that a

- 740 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

constructive trust should have been imposed on Green Quest. We find the case distinguishable. In *Simons*, the parties entered into a premarital agreement that would determine the division of the marital estate in the event of a dissolution. The parties were married for over a decade, and during their marriage, they had purchased a company, partially with marital funds. *Id.* Unbeknownst to the wife, the husband titled the company solely in his name, although he introduced his wife to people as a co-owner. *Id*. The trial court found the premarital agreement enforceable but imposed a constructive trust on the company. *Id.*

On appeal, the Nebraska Supreme Court noted that the wife had testified that the parties had a long-term goal of finding a business in which they could each play an active role and that the wife believed the funds used to purchase the business came from their joint account and was unaware that additional funds came from the husband's parents. *Id*. The wife provided substantial labor for minimal pay, which the husband described as a way to have staff without expense, and the wife was designated as an owner on signs. *Id*. Without the wife's knowledge, the husband created several limited liability companies in his own name. *Id*. A significant portion of business proceeds were left as cash in business accounts titled solely in the husband's name. *Id*.

Recognizing that a constructive trust sounds in equity for which a de novo review is conducted, the Supreme Court affirmed the imposition of the constructive trust. *Id*. In doing so, it identified the wife's testimony that it had been the parties' long-term goal to own a business in which they could each play an active role. It credited her testimony that she believed the initial purchase came from their joint account, which they had worked to accumulate for purposes of buying a business. It further noted the wife's substantial amount of labor for minimal pay and her efforts to grow the business. Moreover, the court noted the husband created various business entities in his own name without the wife's knowledge.

- 741 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

The concurring opinion expressed concern that the decision could lead to a misunderstanding that the court was sanctioning "the remedy of a constructive trust in run-of-the-mill marital dissolution actions." *Id*. at 181, 978 N.W.2d at 155 (Cassel, J., concurring). The concurrence noted that the use of a constructive trust in that case was driven by the enforcement of the premarital agreement. The concurrence stated that "where parties bring individual property to a marriage and do not attempt to use a premarital agreement regarding division of property, the division of property would be controlled solely by" the applicable statutes and case law. *Id*. at 182, 978 N.W.2d at 155 (Cassel, J., concurring). Further, the concurrence expressed doubt that the remedy of a constructive trust would apply to parties' actions prior to a marriage.

We find the concurrence in *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022), instructive in this case. This is a run-of-the-mill dissolution action. Samuel purchased the company well before the parties married, and Jeanie did not contribute any funds to the purchase. Although the parties cohabitated prior to the marriage, the actual marriage was less than 2 years in duration, and unlike the parties in *Simons*, Jeanie and Samuel did not enter into a premarital agreement. Jeanie was aware that Samuel was the source of funds for the purchase of the company, and she was aware that her name did not appear on any documents related to the establishment of the limited liability company and the corporation. Jeanie worked for Green Quest and was listed as the vice president, but was generously compensated. References to Jeanie as an owner, be it on the company website, a business card, or by Samuel himself, are not sufficient to overcome the other evidence in this case. Jeanie has failed to establish that it would be inequitable for Samuel to retain title to Green Quest. The district court did not err in refusing her request to impose a constructive trust over Green Quest, and the division of the marital estate is governed solely by statutes and case law applicable to the division of marital assets.

- 742 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

*Fraud.*

Jeanie assigns that the district court erred in failing to find evidence of fraud because Samuel misled the court about whether this was his second marriage, attempted to discuss the terms of her prior divorce, and approved of the language used on the Green Quest website listing Jeanie as owner. We fail to see how either party's prior marriage is relevant in determining whether a constructive trust over Green Quest should have been imposed. To the extent Jeanie argues that inconsistencies in Samuel's testimony should have called into question his credibility, our de novo review supports the denial of a constructive trust even if based solely upon the facts as testified to by Jeanie.

Samuel formed the business entities prior to the parties' marriage; thus, no marital funds were used to establish them, and Jeanie did not contribute financially to their formation. Even if Jeanie performed the substantial work for the business to which she testified, she was well compensated for her employment. Any misrepresentation to the public that Jeanie was an owner is insufficient to establish that Samuel obtained title to the business by fraud and that he should be denied of his property so obtained. This assigned error fails.

*Admission of Corporate Tax Returns.*

Jeanie assigns that the district court erred in failing to admit into evidence the corporate tax returns for Green Quest. At trial, Jeanie offered corporate tax returns for the years 2018 through 2021. Samuel objected because the line of questioning was beyond the scope of direct examination. During subsequent discussion, Jeanie explained the tax returns showed the corporation's growth and were evidence to impeach Samuel's prior testimony that the company did not make any money during the marriage. Although the court stated it was going to allow the exhibits, it later explained that it was "going to reverse [itself]. These all exceed the scope of direct. [It was] receiving none of them."

- 743 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

[11] On appeal, Jeanie argues the district court erred in refusing to admit the tax returns. We agree. Jeanie testified that the business began making money after 2021. Samuel, however, denied that the company had grown in value. Jeanie sought to introduce the tax returns that included a yearly comparison of the company's financial status, including gross profits, net gains, and retained earnings. Where testimony is given by a witness on direct examination and that testimony creates an inference favorable to the party producing the witness, anything within the knowledge of that witness tending to rebut the inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right. *Janik v. Gatewood*, 233 Neb. 298, 444 N.W.2d 900 (1989). Therefore, because Samuel's denial of company growth was favorable to him, Jeanie was entitled to cross-examine him on the tax returns, and have them received into evidence, to rebut that testimony. The district court erred in sustaining Samuel's objection.

As set forth below, we further determine that the district court erred in classifying the entirety of Green Quest as Samuel's premarital property, the effect of which requires the cause to be remanded to the district court. Upon remand, the district court is directed to consider the tax returns in determining whether they, along with other evidence from trial, support a finding that Green Quest appreciated in value during the marriage due to the active efforts of either party.

*Active Appreciation.*

Jeanie assigns that the district court erred in failing to apply the active appreciation rule. Jeanie argues that any increase in value to Green Quest was due to active appreciation and should be included as part of the marital estate. The district court found that Green Quest was Samuel's premarital property. As such, Jeanie was awarded no portion of Green Quest. We determine that any active appreciation of Green Quest after July 12, 2021, the date of marriage, is part of the marital estate; thus,

- 744 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

the district court abused its discretion in finding that Green Quest was entirely Samuel's premarital property.

To begin our analysis, we recite the familiar framework for dividing a marital estate. Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2016) is a three-step process. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and determine the parties' marital liabilities. *Id*. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Stava v. Stava, supra.*

[12,13] Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id*. The burden of proof rests with the party claiming that the property is nonmarital. *Id*. The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id*. The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal question and not a matter of the court's discretion. *Id*. The second step, valuation, involves questions of fact, and the third step, dividing the marital estate in accordance with the principles of § 42-365, is a matter of discretion. *Stava v. Stava, supra*.

[14] All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate. *Id*. The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's ability to determine how the property should be divided in an action for dissolution of marriage. *Id*. Appreciation, be it active or passive, in the marital interest is always marital; it is simply part of the marital property. *Id*.

[15] In contrast, property that a party brings into the marriage is usually excluded from the marital estate. *Id*. The Nebraska Supreme Court has said that the equity in property at

- 745 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

the time of marriage is a nonmarital asset which, if established, should be set aside as separate property. See *id*. This includes its passive appreciation. *Id*.

Separate property can become marital property through active appreciation. See *id*. Active appreciation converts to marital property only the increase in a nonmarital asset's value due to a contribution of marital funds or efforts. *Id*. This is opposed to passive appreciation, which is appreciation caused by separate contributions and nonmarital forces. *Id*.

First, we must determine whether any portion of Green Quest should be included in the marital estate. Samuel purchased Green Quest in 2018, prior to the parties' marriage. Samuel still owned Green Quest when the parties married on July 12, 2021, and continued to own it throughout the marriage. Green Quest was property Samuel brought into the marriage, which property would usually be excluded from the marital estate. However, any increase in value in Green Quest that occurred during the marriage would be included in the marital estate, unless Samuel could prove the increase was due to passive appreciation. Because any active appreciation in Green Quest's value is part of the marital estate, we proceed to step two, which requires us to value the marital asset.

At the times relevant to the parties' marriage, Green Quest was a corporation. To determine the value of a closely held corporation, the trial court may consider the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, marketability of the shares, past earnings or losses, and future earning capacity. *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997). The method of valuation used for a closely held corporation must have an acceptable basis in fact and principle. *Id*.

Samuel opined that Green Quest had not increased in value, and there was evidence that as of July 2023, there was still approximately $608,000 owed on the Green Quest business loan. Jeanie, however, testified that the business did not start making money until 2021. Jeanie attempted to use Green

- 746 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

Quest's tax returns to establish that the company increased in value, but the court excluded these exhibits.

Any active appreciation in Green Quest's value would be part of the marital estate; however, the district court improperly excluded the only documentary evidence Jeanie offered in an attempt to prove this increase. Therefore, we reverse the portion of the decree finding Green Quest to be solely Samuel's premarital property and vacate its division of the marital estate, including its equalization payment. We remand the cause to the district court to determine whether the evidence in the record, including the tax returns, supports a finding of active appreciation, and to include that amount in the marital estate and equitably divide it if the evidence is sufficient to quantify it.

We remand the cause for further proceedings to determine whether there was any increase in the value of Green Quest caused by active appreciation during the marriage and, if so, to value that increase and equitably divide the marital estate.

*Division of Marital Estate.*

Jeanie assigns that the district court erred in failing to equitably distribute the marital estate. Her argument focuses on the district court's decision to set aside Green Quest as Samuel's premarital property and to ignore the active appreciation rule. Because we vacate the division of the marital estate and remand the cause for further proceedings as set forth above, we need not address this argument. See *Averill v. Omaha Public Schools*, 33 Neb. App. 272, 14 N.W.3d 556 (2024).

*Award of Attorney Fees.*

[16] Jeanie assigns that the district court erred in ordering her to pay Samuel's attorney fees and in failing to award her attorney fees. We find the district court did not abuse its discretion in its award of attorney fees. In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Jenne v. Jenne*, 33 Neb. App. 30, 10 N.W.3d

- 747 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

372 (2024). In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id*.

When awarding Samuel attorney fees, the district court stated that the case was "unnecessarily complicated and prolonged by [Jeanie's] repeated filings for temporary spousal support without meeting the basic statutory requirement to provide a statement of her financial condition." Additionally, the district court stated that at trial, Jeanie requested unreasonable relief related to the distribution of the marital home, attorney fees, and alimony. The district court noted that the cases Jeanie relied on in support of her position for a constructive trust were very narrow and that at trial, there was a complete lack of evidence of any facts approaching the cases upon which Jeanie relied. Samuel's total attorney fees were $25,112.10, and he was awarded $12,500, approximately half of the total amount.

Although we remand the cause for further valuation and division of the marital estate, the basis upon which the award of attorney fees was made is unaffected by our remand. The record supports the district court's recitation of the progression of the case, including Jeanie's motions for spousal support and accompanying requests for attorney fees, which were denied. We affirmed the district court's decision denying Jeanie a constructive trust over Green Quest. In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). A determination that the positions taken by a party were not frivolous or maintained

- 748 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

in bad faith does not prevent the court from awarding attorney fees. See *Moore v. Moore, supra*.

Under an abuse of discretion standard, when we review the factors upon which an award of attorney fees is to be considered, we cannot find that the district court's award of half of Samuel's incurred legal fees was clearly untenable or unfairly deprived Jeanie of a substantial right and denied just results. Because we find no abuse of discretion in the district court's award, we affirm this portion of the decree.

Jeanie also assigns that the district court erred in failing to award her attorney fees. As noted above, the district court determined that Jeanie filed numerous motions for temporary spousal support without meeting the statutory requirement to provide a financial statement and that she failed to present evidence to support her request for a constructive trust. Even if Jeanie is successful in her claim that a portion of Green Quest is marital property in which she is entitled to share, we cannot say, based on this record, that the failure to award Jeanie attorney fees was unreasonable or untenable. The district court did not abuse its discretion in declining to award Jeanie attorney fees.

## CONCLUSION

We find the district court did not err in failing to impose a constructive trust or in failing to find Samuel committed fraud. It also did not abuse its discretion in its award of attorney fees. However, we find the district court abused its discretion in determining Green Quest was entirely Samuel's premarital property and in excluding the corporate tax returns. We reverse the portion of the decree finding Green Quest to be solely Samuel's premarital property and vacate its division of the marital estate, including its equalization payment. We remand the cause to the district court to determine whether the evidence in the record, including the tax returns, supports a finding of active appreciation and to include that amount in

- 749 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

the marital estate and equitably divide it if the evidence is suf-
ficient to quantify it.

AFFIRMED IN PART, REVERSED AND VACATED IN PART,
AND REMANDED FOR FURTHER PROCEEDINGS.

BISHOP, Judge, concurring in part, and in part dissenting.

I concur with the majority's opinion except for the section
on attorney fees; as to that section, I dissent. I would vacate
the attorney fees awarded to Samuel in light of our reversal of
the district court's decree related to Jeanie's marital interest in
any active appreciation in Green Quest.

The majority determined that although we are remanding
the cause for further valuation and division of the marital
estate, "the basis upon which the award of attorney fees was
made is unaffected by our remand." It therefore concluded
there was no abuse of discretion by the district court in
ordering Jeanie to pay $12,500 in attorney fees to Samuel.
However, in my opinion, since the trial court's rationalization
for awarding attorney fees was, in part, based upon its con-
clusion that Jeanie was not entitled to any interest in Green
Quest, a determination we are reversing, the award of attorney
fees should be vacated so that it can be reconsidered in light
of the outcome in this appeal.

The district court stated in the decree that the case was

unnecessarily complicated and prolonged by [Jeanie's]
repeated filings for temporary spousal support without
meeting the basic statutory requirement to provide a state-
ment of her financial condition, and by [her] untenable
legal position that she was entitled to a constructive trust
of a corporate entity wholly funded by [Samuel] before
the parties were married and arguing that the corporation
was an alter ego of the marriage.

The court indicated that it was "unreasonable" for Jeanie to
request the marital home that Samuel had lived in for the
past year preceding trial, alimony "after this approximately
2 year marriage without demonstrating any financial need or

- 750 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

justification," attorney fees, and half of Green Quest based on her claim of an equitable interest. The court described this case as "run-of-the-mill" and that it was "unnecessarily prolonged and complicated by unrealistic reliance on outlier cases without possessing the evidence necessary to support recovery." The court added that it "became apparent early on . . . that this was a short-term marriage, that [Jeanie] held no legal interest in Green Quest . . . , and that she would be relying on equitable principles for recovery based on two cases where a constructive trust was implemented under very narrow factual scenarios."

In summary, the district court stated:

> Because of the above and foregoing, [Samuel] incurred unnecessary attorney fees for multiple pre-trial hearings on [Jeanie's] motions for temporary spousal support and attorney fees, and again for the trial herein. In her post-trial brief, [Jeanie] complains that this court repeatedly mentioned this was a 2-year marriage as it dragged on and on through multiple motion hearings and repeated requests for alimony by [Jeanie] that were not supported by the evidence required by law as if stating that obvious fact is somehow prejudicial or error. . . . There was no rational argument based on law or evidence presented during these proceedings, including trial on the merits, that would support [Jeanie's] claim for a constructive trust in this case and persisting in those efforts created unnecessary litigation, delay, and expense.

Although this court ultimately agreed with the district court that the evidence did not support imposing a constructive trust over Green Quest, we did not find Jeanie's request to be made frivolously without any "rational argument based on law or evidence," as concluded by the trial court. More importantly, Jeanie's general position that she was entitled to a marital interest in the growth of Green Quest during the marriage was appropriately supported by the law, as determined above in the majority opinion. In fact, at a hearing before the district

- 751 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

court on September 18, 2023, Jeanie specifically referenced *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024), the case relied upon in the majority opinion regarding active appreciation. Citing to *Stava* and other cases, Jeanie argued that even if Green Quest was a nonmarital asset, the "appreciation during the marriage [was] marital insofar as . . . it was caused by the efforts of either of the spouses." Thus, from early in the proceedings, Jeanie's request for an equitable interest in Green Quest was rooted in appropriate legal principles, even though her constructive trust theory failed. Therefore, to the extent the court ordered Jeanie to pay a portion of Samuel's attorney fees based on its view that she lacked any marital interest in Green Quest whatsoever, it makes sense to me that the court should be provided an opportunity to reconsider the attorney fees awarded to Samuel in light of our reversal and remand.

For the sake of completeness, I will also address the district court's rationalization, in part, that Jeanie should pay a portion of Samuel's attorney fees because of what it perceived as "unnecessary attorney fees" incurred as a result of "multiple pre-trial hearings on [Jeanie's] motions for temporary spousal support and attorney fees." Although there were a number of pretrial motions filed, this is certainly not unexpected in divorce cases, particularly when the control over finances rests largely with one spouse. In this case, Jeanie had been heavily involved in running Green Quest as its vice president; the company was the source of her livelihood and the provider of her health insurance. Based upon an affidavit filed by Jeanie in August 2023, Samuel was harassing her by telephone regarding his intention to terminate her pay and her health insurance, as well as suggesting he would report her company vehicle as stolen. Samuel was also threatening to remove Jeanie from the company's health insurance (which he did) despite being aware that she had pending health concerns.

A hearing took place on September 18, 2023, to address multiple motions filed by Jeanie. Both parties and their attorneys were present. Jeanie's motions collectively sought to

- 752 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

protect Green Quest and Jeanie's involvement with it or, alternatively, to provide her temporary support. She argued that by allowing her to continue running the company's operations, she could preserve what she viewed as the parties' "chief marital asset." She indicated that she was the "chief operating officer of the business" and that it was "flourishing under her direction." She claimed that Samuel consumed excessive amounts of alcohol, to the point where he was not capable of operating the business. He had ordered Jeanie off the premises and had terminated her involvement in the business, her salary, and her health insurance. Jeanie requested that she be permitted to continue operating the business and taking a salary, and then she would not need alimony. Alternatively, she requested alimony and asked the court to order the restoration of her health insurance. She also requested temporary attorney fees since "[r]ight now, [she] has no income of any kind" and the business "has a million dollars in the bank."

Samuel responded that Jeanie had been earning $3,000 on a "biweekly" basis and that Samuel had offered Jeanie a severance of "three months of income." He also argued that he could not add Jeanie "to the company's insurance policy . . . when she [was] not an employee anymore." He contended that Jeanie had not shown she was unable to work, nor disclosed what her medical condition was or how it affected her ability to work. Finally, he argued that Jeanie had "not provided any information which [was] required by statute of her . . . current financial status."

In an order entered on October 3, 2023, the district court denied Jeanie's request for support because she "failed to . . . comply with Neb. Rev. Stat. §42-359 in support of her request." Neb. Rev. Stat. § 42-359 (Reissue 2016) states in part that "[a]pplications for spousal support or alimony shall be accompanied by a statement of the applicant's financial condition and, to the best of his or her knowledge, a statement of the other party's financial condition." Such statements "shall be under oath and shall show income from salary or other

- 753 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

sources, assets, debts and payments thereon, living expenses, and other relevant information." *Id*. However, the filing of a financial statement can be waived if the parties proceed without objection to a hearing or trial without such a filing. See *Danielson v. Danielson*, 204 Neb. 776, 285 N.W.2d 494 (1979) (although no financial statement was filed pursuant to § 42-359, record showed no timely objection was raised as to such failure, parties had recourse to discovery, and both were present at hearing for examination and cross-examination concerning their financial conditions).

Jeanie filed another request for temporary support in December 2023. Her supporting affidavit averred that she was diagnosed with breast cancer that month and that she was scheduled for surgery in January 2024. She claimed the diagnosis would have occurred sooner had Samuel not terminated her health insurance. Jeanie alleged that once Samuel's counsel discovered that Samuel had terminated her health insurance, Samuel was instructed to reinstate it. Jeanie was thereafter able to proceed with her medical care. Her affidavit reflected that she had been earning $140,000 per year at Green Quest, but upon having her income discontinued by Samuel, she had been unable to find suitable employment due to the "exhaustive treatment for cancer." She alleged that she had been living on "savings and money from wages earned while employed by Green Quest" and that she was "nearly destitute and impoverished because she . . . depleted almost all of her funds." In an order entered on January 18, 2024, the district court overruled Jeanie's "second motion for temporary alimony" because it determined that it was "unsupported by the evidence."

In my opinion, it was not unreasonable for Jeanie to seek temporary relief, including alimony, under the circumstances, nor was it unreasonable for her to seek the restoration of her health insurance. It was Samuel's actions that necessitated the filing by Jeanie of her multiple motions to seek some measure of financial security and health insurance coverage. In the summer of 2023, Samuel made a unilateral decision to

- 754 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
McREYNOLDS v. McREYNOLDS
Cite as 33 Neb. App. 733

terminate Jeanie's income and health insurance, and he allegedly threatened to report her company vehicle as stolen. Jeanie was in the process of undergoing medical evaluation and treatment when Samuel terminated her health insurance coverage. After Samuel was instructed to reinstate Jeanie's health insurance, Jeanie was able to continue her medical care and was diagnosed with breast cancer in December 2023. She was scheduled to have surgery in January 2024. The parties' trial was not scheduled to take place until April. From the summer of 2023 until trial, Jeanne was without financial support, other than her own savings, while having to contend with a significant health issue. A party should not have to deplete an asset for purposes of monthly maintenance unless there is no reasonable alternative, nor should a party be expected to secure new employment while contending with a significant health issue. Under these circumstances, I cannot agree with the district court's assessment that Jeanie "unnecessarily complicated and prolonged" the proceedings with her "repeated filings for temporary spousal support without meeting the basic statutory requirement to provide a statement of her financial condition." Although Jeanie's affidavits may have lacked the detail contemplated under § 42-359, they were not frivolously submitted. Further, her multiple motions seeking temporary relief related to financial support and health insurance coverage were necessitated by Samuel's unilateral actions. Jeanie's requests for temporary relief were reasonable, and even if not granted, the fact that such requests for temporary relief were made should not have served as a basis to order her to pay a portion of Samuel's attorney fees.

For these reasons, I would have vacated the portion of the district court's decree awarding $12,500 in attorney fees to Samuel. This would have provided the court with an opportunity to reconsider the issue in light of the outcome of this appeal.